Michael L. **SWANKE,**
**Petitioner, Respondent,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Appellant.**

No. C0-85-1748.

Court of Appeals of Minnesota.

April 22, 1986.

James L. Daniels, Minneapolis, for petitioner, respondent.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Considered and decided by POPOVICH, C.J., and LANSING and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

The Commissioner of Public Safety appeals from the trial court's order rescinding the revocation of respondent Michael Swanke's driver's license. Swanke did not file a brief in this matter, and therefore we proceed pursuant to Minn.R.Civ.App.P. 142.03. We reverse and remand.

## FACTS

On May 4, 1985, at approximately 1:00 a.m., Trooper Floyd Hanson of the Minnesota State Patrol observed Swanke's vehicle weaving onto the fog line and shoulder while Swanke was traveling southbound on Interstate 35W near Diamond Lake Road. Hanson stopped the vehicle near Lyndale Avenue and observed that Swanke had a strong odor of alcohol on his breath, bloodshot and glassy eyes, slurred speech and his pupils did not react to light. Swanke refused to submit to a preliminary screening test, but did perform various field tests. He was arrested for driving a motor vehicle while under the influence of alcohol.

Hanson read the implied consent advisory form to Swanke and Swanke decided that he wanted to contact an attorney. Hanson took Swanke to the Minneapolis Police Department where Swanke called an attorney. Hanson then finished reading the implied consent advisory form and Swanke consented to an Intoxilyzer breath test.

At 1:53 a.m., after observing Swanke for fifteen minutes, Hanson administered the test to him and the test produced a reading

of .156. The Intoxilyzer indicated, however, that Swanke's breath sample was deficient. Therefore, no replicate test was made. Swanke had tried about sixteen times to blow into the Intoxilyzer.

He pleaded for another chance, and Hanson administered a second test at 2:04 a.m. This time, Swanke attempted to blow twelve times into the Intoxilyzer. The test produced a reading of .178. The instrument again indicated a deficient sample and no replicate test was made.

At the hearing, Swanke testified that he suffers from asthma and that he informed Hanson of his asthma and allergies at the police station. Hanson testified that Swanke did not mention he had asthma until he was on the way to jail. No blood test was administered to him.

The trial court found that Hanson tried to obtain an accurate Intoxilyzer reading by allowing Swanke to attempt sixteen times to blow an adequate breath sample for the first test and twelve times for the second test. It further found that Hanson knew that Swanke had asthma, even though it was unclear whether he found out about the asthma in the testing room or en route to the jail. Hanson certified to the Commissioner that Swanke had refused to take the test, and Swanke's driving privileges were revoked.

The trial court rescinded the revocation of Swanke's driving privileges. The trial court reached the following relevant conclusions of law:

> 5. [Swanke] did not refuse to submit to chemical testing.
>
> \*  \*  \*  \*  \*  \*
>
> 13. No blood test was offered to [Swanke] as required by *Aunan v. Commissioner of Public Safety*, [361 N.W.2d 907 (Minn.Ct.App.1985)].
> 14. The [Commissioner] has not shown by a fair preponderance of the evidence that [Swanke's] inability to provide a valid sample was due to [Swanke] not deliberately trying to provide the valid sample rather than [Swanke's] physical inability to provide a sample.

## ISSUE

Did the trial court err in requiring the Commissioner to prove respondent was physically able to provide two adequate breath samples?

## ANALYSIS

■ Swanke failed to provide two adequate breath samples for the Intoxilyzer test and the Intoxilyzer registered deficient samples. The implied consent law provides:

> For purposes of this section when a test is administered using an infrared breath-testing instrument, failure of a person to provide two separate, adequate breath samples in the proper sequence constitutes a refusal.

Minn.Stat. § 169.123, subd. 2b(c) (1984). The rules promulgated by the Commissioner provide further that:

> Failure of a person to provide two separate, adequate breath samples constitutes a refusal, unless the failure is the result of physical inability to provide a sample, in which case a sample of blood or urine must be provided by the person.

Minn.R. 7502.0430, subpt. 1 (1985). *See also Aunan*, 361 N.W.2d at 908–09. Where, as here, the officer determines that the driver is physically able to provide a breath sample and reports a refusal but does not offer the driver an alternative test, the driver may raise the issue of physical inability at the implied consent hearing. *Carlson v. Commissioner of Public Safety*, 374 N.W.2d 791, 794 (Minn.Ct.App. 1985).

■ The Commissioner asserts that the trial court improperly placed upon him the burden of proving that Swanke was physically able to provide an adequate sample, in effect requiring the Commissioner to disprove a "speculation" that Swanke might have been physically unable to provide an adequate sample. We agree with the Commissioner's argument.

"[A] petitioner in an implied consent case may assert an affirmative defense that re-

fusal to permit testing was based on reasonable grounds." *Cantor v. Commissioner of Public Safety,* 376 N.W.2d 530, 532 (Minn.Ct.App.1985). *See also* Minn. Stat. § 169.123, subd. 6 (1984); *Aunan,* 361 N.W.2d at 908.

The burden is upon Swanke, as an affirmative defense, to show that he was physically unable to provide an adequate sample. In light of the trial court's conclusion 14, we believe the trial court erred in placing upon the Commissioner the burden of proving that Swanke had no physical inability. For this reason, we remand to the trial court.

■ We need not resolve the Commissioner's other argument that the trial court erred in failing to make a finding on the issue of physical inability. We do note, however, that once the driver raises the issue of physical inability, the trial court must make specific findings on the issue of whether the driver's failure to provide two adequate breath samples resulted from his physical inability. *Aunan,* 361 N.W.2d at 909. If the court finds that the driver was physically unable to provide the required samples, the trial court must then determine whether the driver refused to provide a urine or blood sample. *Id.*

On remand, if Swanke fails to meet his burden of proof and the trial court determines that he was physically able to give two adequate breath samples, the revocation will stand. If the trial court finds a physical inability, the revocation of Swanke's license must be rescinded if the court finds that no blood or urine test was offered to him. *See Cantor,* 376 N.W.2d at 532.

### DECISION

The trial court erred in placing upon the Commissioner the burden of proving that respondent was physically able to provide two adequate breath samples. On remand, the trial court may receive additional evidence that may be necessary to apply the law set forth in this opinion.

Reversed and remanded.