**STATE of Minnesota, Respondent,**

v.

**Grant Gregory JOHNSON, Appellant.**

**No. C9–02–2144.**

Court of Appeals of Minnesota.

Dec. 16, 2003.

Peter J. Timmons, Bloomington, MN, for appellant.

Mike Hatch, Attorney General, St. Paul, MN and Lisa C. Netzer, Associate City Attorney, Bloomington, MN, for respondent.

Considered and decided by RANDALL, Presiding Judge; MINGE, Judge; and PORITSKY, Judge.

## OPINION

PORITSKY, Judge.[*]

Appellant Grant Gregory Johnson was convicted of the misdemeanor offenses of (1) third-degree driving while impaired—under the influence of alcohol (DWI) and

(2) refusal to submit to a chemical test. On appeal, he argues (a) that the prosecutor committed misconduct and (b) that the district court erred in (i) denying appellant's motion for mistrial, (ii) precluding testimony from a medical expert, and (iii) instructing the jury about the defense of reasonable refusal. We affirm.

## FACTS

Appellant was involved in a fight at his friend's apartment complex. Bloomington police officers were called to the scene. One officer talked with appellant and noticed three indicia of intoxication: appellant's breath smelled strongly of alcohol, his eyes were bloodshot and glassy, and his speech was slurred. Appellant was warned not to drive. Despite a cut above his left eye and dried blood by his lip, apparently as a result of the fight, appellant refused offers of medical assistance.

Approximately two hours later, the same officer responded to a report of a pickup truck smashing into a tree at the apartment complex, and he recognized appellant, who had been driving the pickup. The officer again noticed the same three indicia of intoxication, and also noticed a fourth: appellant had difficulty standing in one spot without swaying. Appellant failed three standard field sobriety tests. During the testing, he did not mention any medical problems. Although appellant's left eye was swollen, he again refused offers of medical assistance.

The officer then administered a preliminary breath test to appellant; the test reading was 0.101. Appellant was arrested and brought to the Bloomington police department, where he was read the Minnesota Implied Consent Advisory. After appellant made two phone calls, he told the

[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

officer that his attorney advised him to take the test. But when asked to take the test, appellant refused, stating that he did not believe he needed to give a reason for refusing. Appellant was charged with third-degree DWI and refusal to test.

At trial, appellant admitted that he had consumed approximately six beers prior to the fight, but had not felt intoxicated. Appellant could not remember getting into his pickup truck or driving it into the tree, but agreed that it had happened. He also testified that, roughly four years earlier, he had been diagnosed with Addison's disease, that he takes prescription medications every day and can suffer an adrenal crisis without it, and that, during a crisis, he will "go through stages of disorientation." Appellant's mother testified that, during a crisis, appellant's behaviors resemble those of someone intoxicated. Appellant admitted that he did not mention his medical condition to the officers. He also stated that he did not know why he refused to take the breath test, but that he had made a clear decision not to. When asked what he attributed his confusion to, he said it was due both to the fight he had been in earlier and to his "disease which makes [him] very disoriented."

At trial, appellant tried to introduce testimony on Addison's disease from an emergency room doctor who had not examined appellant and was not qualified as an Addison's disease expert. The district court precluded the doctor from testifying.

During closing argument, the prosecutor said that no medical experts had given any opinions about whether appellant had suffered an adrenal crisis or was intoxicated. Defense counsel argued that both appellant's performance on the field sobriety tests and his decision not to take the test were attributable to confusion and other symptoms of an adrenal crisis, which were due to his Addison's disease. After the

jury returned its guilty verdicts, appellant moved for a mistrial and argued that the prosecutor's remarks constituted misconduct. The district court denied the motion, stating that the prosecutor's comments referred to appellant's affirmative defense of reasonable refusal and noting that defense counsel had not objected during the argument.

This appeal follows.

## ISSUES

1. Did the prosecutor commit prejudicial misconduct during closing argument, requiring a mistrial?

2. Did the district court abuse its discretion by precluding the emergency room doctor from testifying about Addison's disease?

3. Did the district court abuse its discretion in its instructions to the jury regarding reasonable refusal?

## ANALYSIS

### 1. Prosecutor Misconduct

■■■ Appellant argues (1) that the prosecutor committed misconduct in her closing argument when she referred to the absence of expert medical testimony and (2) that the district court erred in denying appellant's motion for a mistrial based on the alleged prosecutorial misconduct. The determination of whether a prosecutor engaged in misconduct is largely within the discretion of the district court. *State v. Ture*, 353 N.W.2d 502, 516 (Minn.1984). This court reviews a trial court's denial of a motion seeking a mistrial for an abuse of discretion. *State v. Jorgensen*, 660 N.W.2d 127, 133 (Minn.2003).

■■■ As a threshold matter, appellant failed to object to the prosecutor's comments and did not move for a mistrial until after the jury returned its verdict. A de-

fendant who fails to object to a prosecutor's closing argument or to seek a cautionary instruction ordinarily waives the right to have the issue considered on appeal. *State v. Parker*, 353 N.W.2d 122, 127 (Minn.1984). Absent a timely objection or request for a curative instruction, we review for plain error, for conduct so clearly erroneous and so prejudicial that the defendant's right to a remedy should not be forfeited. *State v. Hunt*, 615 N.W.2d 294, 302 (Minn.2000).

Appellate courts reviewing claims of prosecutorial misconduct generally will reverse only if the misconduct, when considered in light of the whole trial, impaired the appellant's right to a fair trial. *State v. Powers*, 654 N.W.2d 667, 678 (Minn.2003). If the claim of misconduct arises out of the closing argument, this court considers the closing argument as a whole; it does not focus on particular "phrases or remarks that may be taken out of context or given undue prominence." *State v. Johnson*, 616 N.W.2d 720, 728 (Minn.2000) (quotation omitted).

In her closing argument, the prosecutor referred to appellant's failure to call a medical expert to testify about Addison's disease. In general, it is improper for a prosecutor to comment on a defendant's failure to call a witness or contradict testimony. *State v. Porter*, 526 N.W.2d 359, 365 (Minn.1995) (stating that one rationale is to avoid suggesting that the defendant has any burden of proof). But appellant had the burden of persuasion on the affirmative defense of reasonable refusal. *See* Minn.Stat. § 169A.53, subd. 3(c) (2002) (stating that reasonable refusal is an affirmative defense for test refusal). Appellant argued that the disease was a reason for his test refusal. It was not error for the prosecutor to comment on appellant's failure to produce evidence on this issue. *State v. Parker*, 417

N.W.2d 643, 647 (Minn.1988) ("[I]t is questionable whether the prosecutor committed any misconduct, since the statement related to a matter on which defendant had the burden of proof.").

But appellant was also charged with DWI, which he defended by attempting to show that the Addison's disease was also an explanation for his display of indicia of alcohol. This defense attempts to negate an element of the prosecutor's case, on which the burden of persuasion rests at all times with the prosecution. Thus, the jury could have taken the prosecutor's comment regarding the lack of medical evidence to mean that appellant had some burden to disprove he was under the influence, and if this occurred, the comment would amount to misconduct.

Even where established, however, prosecutorial misconduct does not in and of itself require a new trial. *State v. Scruggs*, 421 N.W.2d 707, 715–16 (Minn. 1988). Courts apply a harmless error analysis to determine whether prosecutorial misconduct warrants a new trial. *State v. Caron*, 300 Minn. 123, 127–28, 218 N.W.2d 197, 200 (1974). If a statement is improper, it is reviewed using a two-tier analysis that varies with the seriousness of the alleged improper statement. *State v. Boitnott*, 443 N.W.2d 527, 534 (Minn.1989). More serious misconduct will be deemed harmless beyond a reasonable doubt if the verdict rendered was surely unattributable to the misconduct; less serious misconduct is harmless if it likely did not play a substantial part in influencing the jury to convict. *Powers*, 654 N.W.2d at 678. Because the prosecutor had a right to comment on appellant's failure to produce evidence in connection with the defense of reasonable refusal, we conclude that any misconduct was less serious. *See Caron*, 300 Minn. at 128, 218 N.W.2d at 200–01 (remarks on defendant's failure to call wit-

nesses, to which defendant did not object, treated as less serious misconduct).

■ We further conclude that to the extent the prosecutor's argument may have left an erroneous implication, such error was harmless. Considerable evidence on the DWI charge was presented against appellant, including his own admission that he had consumed six beers, and the officer's testimony that appellant smelled strongly of alcohol and that appellant's eye were glassy and blood shot. *See Parker*, 417 N.W.2d at 648 (concluding that even if prosecutor's statements were improper, the impropriety was harmless error due to the overwhelming evidence against the defendant). The prosecutor's contested remarks were limited to four lines of roughly 13 pages of argument. *See Johnson*, 616 N.W.2d at 730–31 (stating appellate courts consider closing arguments as a whole rather than particular phrases). The court properly instructed the jury on the burdens of proof, and appellant did not object to the prosecutor's remarks or ask for a curative instruction. *See State v. Ives*, 568 N.W.2d 710, 713 (Minn.1997) (failure to object implies that comments were not prejudicial). We caution, however, that where the defendant has the burden of persuasion on an affirmative defense, although the prosecutor may properly comment on the defendant's failure to produce evidence in support of that defense, the prosecutor is under a duty to insure that the reference cannot be perceived by the jury to mean that the defendant has any burden of proof with respect to an element of any charge for which the defendant is on trial.

Because we conclude that any misconduct was not prejudicial, the district court did not abuse its discretion in denying appellant's motion for mistrial.

## 2. Exclusion of Testimony

■ Our review of a district court's evidentiary ruling on the admissibility of expert testimony is "very deferential." *Gross v. Victoria Station Farms, Inc.*, 578 N.W.2d 757, 760–61 (Minn.1998). We do not review such rulings de novo. *See id.* The ruling rests in the sound discretion of the district court and will not be reversed absent a clear abuse of discretion. *State v. Ritt*, 599 N.W.2d 802, 810 (Minn.1999). Appellant argues that the trial court abused its discretion in refusing to allow an emergency room doctor to testify about Addison's disease. Under Minn. R. Evid. 702, testimony may be offered by a qualified expert if the "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." The district court "scrutinize[s] the proffered expert testimony as it would other evidence and exclude[s] it when the testimony is irrelevant, confusing, or otherwise not helpful." *State v. Nystrom*, 596 N.W.2d 256, 259 (Minn.1999).

■ Appellant attempted to call an emergency room doctor to testify about Addison's disease in general. But defense counsel admitted that the doctor was not an expert with regard to Addison's disease. In addition, the doctor had never treated appellant and had no personal knowledge of appellant's experiences with the disease. We defer to the district court and conclude that the court did not abuse its discretion in precluding the doctor's testimony about Addison's disease.

## 3. Jury Instructions

■ Appellant argues that the trial court erroneously instructed the jury regarding reasonable refusal to test. Appellate courts afford significant discretion to district courts in crafting jury instructions. *State v. Kuhnau*, 622 N.W.2d 552, 555

(Minn.2001). Jury instructions must be viewed in their entirety to determine whether they fairly and adequately explain the law of the case. *State v. Flores,* 418 N.W.2d 150, 155 (Minn.1988).

█ As a threshold matter, appellant failed to object to the jury instructions at trial. *See State v. Smith,* 655 N.W.2d 347, 352 (Minn.App.2003) (party who fails to object generally waives the right to raise the issue on appeal). Where a defendant fails to object to a jury instruction, this court may only review for plain error of fundamental law or error that affects substantial rights. *See State v. Gutierrez,* 667 N.W.2d 426, 433 (Minn.2003) (applying the plain error rule to unobjected-to jury instructions); *State v. Griller,* 583 N.W.2d 736, 740 (Minn.1998) (defining plain error as: (1) error, (2) that is plain, and (3) affects substantial rights).

█ The district court instructed the jury on the elements of refusal to submit to testing and the affirmative defense of reasonable refusal:

> Refusal to Submit to Testing Elements

The elements of refusal to submit to testing are:

First, a peace officer had probable cause to believe that the defendant drove, operated, or was in physical control of a motor vehicle while under the influence of alcohol. "Probable cause" means that it was more likely than not that the defendant drove, operated or was in physical control of a motor vehicle while under the influence of alcohol.

Second, the defendant was requested by a peace officer to submit to a chemical test of the defendant's breath.

Third, the defendant refused to submit to the test.

Fourth, the defendant's act took place on or about June 21, 2002 in Hennepin County.

If you find that each of these elements has been proven beyond a reasonable doubt, the defendant is guilty. If you find that any element has not been proven beyond a reasonable doubt, the defendant is not guilty.

> Refusal to Submit to Testing—Reasonable Refusal

If you find that the State has proven all four elements of this offense beyond a reasonable doubt, you must then decide whether the Defendant's refusal to submit to the chemical test was reasonable.

The Defendant is not guilty of refusal to submit to testing if the Defendant's refusal was reasonable. The burden of proof on this issue and only this issue is on the Defendant. The Defendant has the burden of proving this defense by the preponderance of the evidence. This means that the Defendant must prove that it is more likely true than not true that his refusal to take the test was reasonable.

For example, a Defendant's refusal is reasonable when the officer gives confusing and misleading information to the Defendant regarding his rights or if the police have made no attempt to inform a confused Defendant of his obligation to submit to testing. The law only requires that the police officer read the printed advisory consent form to the defendant.

Appellant argues that the district court's use of an example excluded any possibility that a physical, medical, or mental condition could constitute a reasonable refusal. We disagree.

The district court's instruction was a substantially correct statement of the law. *See Peterson v. State,* 282 N.W.2d 878, 881

(Minn.1979) (holding no error of fundamental law or controlling principle where the instruction correctly states the elements of a charge). The court was careful to use the phrase, "[f]or example," before the reference to the example of a reasonable refusal. Moreover, the jurors had written copies of the instruction when they went to deliberate; we assume the jury followed the court's instructions. *See State v. Pippitt,* 645 N.W.2d 87, 94 (Minn. 2002). We conclude that the instruction did not contain an error of fundamental law or controlling principle and that the district court did not abuse its discretion.

## DECISION

Because any erroneous implication caused by the prosecutor's remarks during closing argument was harmless, the district court did not abuse its discretion in denying appellant's motion for a mistrial. The district court properly exercised its discretion in precluding an emergency room doctor from testifying about a condition in which he was not an expert and for which he had not treated appellant. The district court did not abuse its discretion by including an example of a reasonable refusal in the jury instructions.

**Affirmed.**